**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-45

UNITED STATES TAX COURT

JOSE C. SANTIAGO AND MARIA L. HERNANDEZ, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18346-11S.                    Filed June 10, 2013.

Jose C. Santiago and Maria L. Hernandez, pro sese.

Tracey B. Leibowitz, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge: This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $15,348 in petitioners' Federal income tax for 2008 and an accuracy-related penalty of $3,070 under section 6662(a).  Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a).  At the time the petition was filed, petitioners resided in Florida.

The issues remaining for decision are whether petitioners are:  (1) entitled to deductions for various expenses reported on Schedule C, Profit or Loss From Business; and (2) liable for an accuracy-related penalty under section 6662(a).[2]

---

[1]Section references are to the Internal Revenue Code (Code), as amended, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Although petitioners reported gross receipts of $15,252 on Schedule C, respondent determined that they failed to substantiate any of the expenses reported on Schedule C, and, therefore, the $15,252 amount should be classified as "other income".  Because we conclude that petitioners substantiated a portion of the vehicle expenses reported on Schedule C, we conclude that the $15,252 amount represents Schedule C gross receipts, and the parties shall prepare computations for entry of decision in this case on that basis.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

### I. Ms. Hernandez's Spa Business

During the relevant period Ms. Hernandez was licensed as a facial specialist by the State of Florida. In 2004 she rented retail space and opened "Milan Esthetique", a spa specializing in facial treatments.

Mr. Santiago earned an associate's degree with a major in business management, and he worked as a travel industry executive. In an effort to promote his wife's business, Mr. Santiago called upon his contacts in the travel industry and arranged for the sale of Milan Esthetique gift certificates to various cruise lines operating in South Florida. The number of certificates that were sold in this manner is not reflected in the record. The certificates were redeemable for a period of two years and were distributed to cruise line employees.

Milan Esthetique's gradual loss of walk-in customers to a local competitor led Ms. Hernandez to close the retail store in 2007. Mr. Santiago nevertheless felt a professional obligation to ensure that all the certificates sold to cruise lines were honored. Consequently, petitioners renovated their personal residence by enclosing the back porch, adding a portable air-conditioning unit, and purchasing

office equipment with the expectation that Ms. Hernandez could continue providing spa services from home. Petitioners were disappointed to learn that Ms. Hernandez could not obtain the necessary license because of local zoning restrictions.

In the meantime, in January 2006 Ms. Hernandez entered into three contracts, titled "Independent Contractor's Agreement", with AB Beauty Salon Management (AB Salon). The contracts provided that Ms. Hernandez would serve as an independent contractor at AB Salon's facilities in Boca Raton, Ft. Lauderdale, and Doral, Florida, providing body exfoliations, facial treatments, body rubs, and pedicure and manicure services in exchange for a commission equal to 65% of the total charges for any services rendered. The agreements allowed Ms. Hernandez to use AB Salon's facilities to provide services to clients holding certificates that had been sold to cruise lines, but she was obliged to remit 35% of the face value of each such certificate to AB Salon.

Ms. Hernandez purchased promotional flyers titled "Mobile Spa by Marie", which included a list of available services and a contact phone number. She also procured decals that were displayed on the passenger side door and the rear window of a sports utility vehicle that she used in her business.

During 2008 petitioners' daughter assisted Ms. Hernandez in providing spa services to clients.  Petitioners reimbursed their daughter for transportation and other expenses.

II.  Schedule C

Petitioners attached a Schedule C to their tax return for 2008, reporting that Ms. Hernandez's spa business had generated gross receipts of $15,252 and that she had incurred total expenses of $61,009, resulting in a net loss of $45,757.  The reported expenses consist of the following:

| Expense | Amount |
|---|---|
| Travel | $575 |
| Car and truck | 36,640 |
| Business use of home | 674 |
| Repairs and maintenance | 1,550 |
| Rent/lease equipment | 500 |
| Office | 3,300 |
| Depreciation and sec. 179 | 1,570 |
| Contract labor | 12,500 |
| Advertising | 2,500 |
| Uniforms | 1,200 |
| Total | 61,009 |

III.  Trial Proceedings

A.  Ms. Hernandez's Absence

Although Ms. Hernandez appeared at the calendar call for the trial session, she did not appear when the case was called for trial the following morning. Mr. Santiago appeared and informed the Court that Ms. Hernandez was unable to appear because of a pre-existing medical condition.  Neither party moved for a continuance, and the case proceeded to trial.

B.  Tax Records

Mr. Santiago testified that most of petitioners' tax records were destroyed in a flood in 2010.  Although Mr. Santiago provided some documents at trial, he did not reconstruct many of the records needed to substantiate expenses underlying the deductions in dispute.

C.  Mr. Santiago's Testimony

Mr. Santiago testified about the various expenses reported on Schedule C, and he stated that he found it necessary to withdraw funds from his retirement account during 2008 to assist Ms. Hernandez in meeting expenses associated with her spa business and, in particular, to pay some of the fees that she owed to AB Salon.

D.  Mileage Logs

Petitioners reported that Ms. Hernandez drove a total of 65,500 miles during 2008 and incurred vehicle expenses of $36,640 in connection with her spa business.  At trial Mr. Santiago presented three logs related to Ms. Hernandez's vehicle expenses.  The first log is an electronic appointment calendar that Ms. Hernandez maintained.  For a given date, the appointment calendar listed only the location of an AB Salon facility (e.g., Boca Raton or Ft. Lauderdale).  Some calendar entries listed the time of day.  The calendar included a number of entries for "Orlando Salon", entries that typically fell on a Friday, Saturday, and/or Sunday.

The second log is a spreadsheet that Mr. Santiago prepared using Ms. Hernandez's paper records.  This log included entries for the day of the week, the date, the general destination (e.g., Boca Raton, Ft. Lauderdale, Orlando), and the number of miles driven.  The log normally assigned 150 miles for trips to Ft. Lauderdale, 175 miles for trips to Boca Raton, and 655 miles for trips to Orlando.  However, in a number of instances, the log assigned 575 miles for trips to Boca Raton falling on a Friday.

The third log is a spreadsheet titled "Milan Esthetique" that Mr. Santiago prepared for limited periods during 2008.  This log included entries for the date,

the client name, the type of service provided (e.g., manicure, pedicure, etc.), and a detailed address. There were no entries in this log for the period February 27 to March 31, 2008, or April 23 to May 16, 2008. There were a number of entries on this log for "Orlando Real Estate".

A comparison of the three logs reveals numerous discrepancies in respect of the number of miles driven and the destinations for a given date. Mr. Santiago explained that the three logs were not entirely consistent because some entries represented trips by petitioners' daughter to one location, while Ms. Hernandez went to another location on the same date. He also testified that entries in the logs for "Orlando Real Estate" related to his efforts to sell real estate timeshares in the Orlando area, although Ms. Hernandez took a number of trips to Orlando to purchase spa supplies. When they traveled to Orlando, petitioners normally spent the night at Mr. Santiago's mother's residence.

## IV. Tax Return Preparation

Mr. Santiago delivered petitioners' tax records for 2008 to a return preparer doing business as Pro Tax Help. Mr. Santiago testified that the person who prepared the tax return is a certified public accountant who has prepared petitioners' returns for the past five or six years. The return preparer filed petitioners' 2008 tax return electronically.

## V. Notice of Deficiency

Respondent disallowed the deduction of $45,757 that petitioners reported as a net loss on Schedule C, as outlined above, and determined that petitioners are liable for an accuracy-related penalty under section 6662(a).

## VI. Posttrial Briefs

At the conclusion of the trial, Mr. Santiago requested permission to file a posttrial brief. The Court granted his request and ordered the parties to file simultaneous briefs on or before February 25, 2013. Respondent filed a brief, but petitioners did not. Although it is within the Court's discretion to dismiss this case and enter a decision for respondent, see Rules 123(b), 151(a), we have reviewed the record and resolved the case on the merits.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioners have not complied with the Code's substantiation requirements and have not maintained or otherwise reconstructed all required records. Therefore, the burden of proof as to any relevant factual issue does not shift to

respondent under section 7491(a).  See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  There must be sufficient evidence in the record, however, to permit the

Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

The Court may permit a taxpayer to substantiate deductions through secondary evidence where the underlying documents have been unintentionally lost or destroyed. Boyd v. Commissioner, 122 T.C. 305, 320 (2004); Davis v. Commissioner, T.C. Memo. 2006-272. A taxpayer is required, however, to reconstruct pertinent records to the fullest extent possible. See Roumi v. Commissioner, T.C. Memo. 2012-2; Chong v. Commissioner, T.C. Memo. 2007-12. In deciding whether a taxpayer has satisfied his or her burden of substantiating a deduction, we are not required to accept the taxpayer's self-serving, undocumented testimony. Niedringhaus v. Commissioner, 99 T.C. 202, 219-220 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. A business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940). The determination of whether an expenditure satisfies the

requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. at 475.

Section 274(d) prescribes more stringent substantiation requirements before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, for the taxable year 2008 the term "listed property" included, inter alia, passenger automobiles. Sec. 280F(d)(4)(A)(i).

To satisfy the requirements of section 274(d), a taxpayer generally must maintain records and documentary evidence which, in combination, are sufficient to establish the amount, date, and business purpose of each separate expenditure or business use related to listed property. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The Court may not use the Cohan rule to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

I. Schedule C

    A. Business Use of Home

Petitioners claimed a deduction of $674 for the business use of their home. Respondent disallowed the deduction for lack of substantiation.

Section 280A(a) sets forth the general rule that an individual taxpayer is not permitted a deduction with respect to the use of a dwelling unit which is used during the taxable year by the taxpayer as a residence. Section 280A(c)(1)(A) prescribes an exception to the general rule of subsection (a) as to a portion of a dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. See Strohmaier v. Commissioner, 113 T.C. 106, 111-112 (1999).

Mr. Santiago described the conversion of petitioners' back porch into an office space. Although he testified that Ms. Hernandez regularly used the space to schedule service dates with clients, he was unable to confirm that she used the space, and the equipment in it, exclusively for a trade or business purpose during 2008. Consequently, respondent's determination on this issue is sustained.

    B. Vehicle Expenses

Petitioners elected to apply standard mileage rates and claimed a deduction of $36,640 for vehicle expenses. The record includes three logs that, in

combination, purport to show the number of miles that Ms. Hernandez and her daughter drove in connection with Ms. Hernandez's spa business.

Vehicle expenses are subject to the strict substantiation requirements of section 274(d). Petitioners' mileage logs, viewed separately, do not include sufficient information to substantiate the vehicle expenses in question. Examining the logs as a group, however, and taking into account the gross receipts of $15,252 that Ms. Hernandez reported from her spa business and other evidence in the record, we conclude that petitioners adequately demonstrated that Ms. Hernandez drove a total of 15,000 miles during 2008 to provide spa services to her clients. Accordingly, petitioners are entitled to a corresponding deduction for vehicle expenses.[3]

C. Remaining Expenses

The balance of the deductions that petitioners claimed on Schedule C were attributable to depreciation of equipment and amounts purportedly spent on

[3]The Commissioner generally updates the optional standard mileage rates annually. However, Rev. Proc. 2007-70, sec. 3.02, 2007-2 C.B. 1162, 1163, which was effective for transportation expenses incurred on or after January 1, 2008, was modified by Announcement 2008-63, 2008-2 C.B. 114, for transportation expenses paid or incurred on or after July 1, 2008. Under Rev. Proc. 2007-70, sec. 3.02, taxpayers are entitled to 50.5 cents per mile, and under Announcement 2008-63, supra, taxpayers are entitled to 58.5 cents per mile. Of the 15,000 miles that Ms. Hernandez drove during 2008, we find that she drove 7,500 miles before July 1, 2008, and 7,500 miles thereafter.

uniforms, travel, repairs and maintenance, rental charges, office equipment, contract labor, and advertising. Mr. Santiago testified that Ms. Hernandez purchased multiple items for use in her spa business during the year in issue, including "scrubs" that she wore when providing spa services, a portable air-conditioner for her office space, various types of office equipment, decals for her vehicle and promotional flyers to advertise her services, and a portable massage table. He also testified that Ms. Hernandez traveled to Las Vegas for an aesthetician convention, paid contract fees to AB Salon, and rented a microdermabrasion machine. However, petitioners offered no documents, such as receipts, canceled checks, or credit card statements, to substantiate the date or the precise amount of any of these expenditures. To the extent they are susceptible to it, there is no evidence in the record that would allow us to estimate an allowable deduction amount for any of these items. See Vanicek v. Commissioner, 85 T.C. at 743. Consistent with the foregoing, respondent's determination disallowing the balance of the deductions petitioners reported on Schedule C is sustained.

## II. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations.

The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on a tax professional may demonstrate that the taxpayer had reasonable cause and acted in good faith where the taxpayer establishes that: (1) the adviser was a competent professional with sufficient expertise to justify the taxpayer's reliance, (2) the taxpayer provided the adviser with necessary and accurate information, and (3) the taxpayer actually relied in good faith on the adviser's judgment. 3K Inv. Partners v. Commissioner, 133 T.C. 112, 117 (2009); DeCleene v. Commissioner, 115 T.C. 457, 477 (2000).

With respect to an individual taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Respondent has discharged his burden of production under section 7491(c) by showing that petitioners failed to keep adequate records and properly substantiate their claimed expenses. See sec. 1.6662-3(b)(1), Income Tax Regs.

Although petitioners relied on a paid tax preparer and trusted him to properly prepare their tax return, there is no evidence in the record regarding the return preparer's experience or qualifications that would support the conclusion that they reasonably relied on him. There also is no evidence that the return preparer took the time to review the return with petitioners, or that petitioners undertook to review the return on their own.

Taxpayers have a duty to review their tax returns before signing and filing them, and the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88

T.C. 654, 662 (1987); <u>Magill v. Commissioner</u>, 70 T.C. 465, 479-480 (1978), <u>aff'd</u>, 651 F.2d 1233 (6th Cir. 1981).

Petitioners failed to establish that their reliance on the return preparer was reasonable or in good faith. Thus, on the record presented, we are unable to conclude that petitioners acted with reasonable cause and in good faith within the meaning of section 6664(c)(1). Accordingly, petitioners are liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.